Good morning. May it please the court. This case arose when a gunman shot three patrons during the attempted carjacking in the parking lot of one of the largest malls in the D.C. metro area. The gunman was a federal police officer with the Department of Homeland Security who'd been the subject of an extensive and widely publicized manhunt since the prior day when he shot his wife and a bystander in the parking lot of a high school at an easy driving distance of the mall. Wall-to-wall coverage of the manhunt included reports broadcast via local radio, television, newspapers, and their websites and other social media platforms. The reporting included the name, description, and a photograph of the gunman, and a police report issued by the department in that location where the initial shooting occurred also included information about the vehicle including the make, model, color, and the tag number that was an out-of-state tag. Where was that included? In a police report that was issued in the jurisdiction. I know because I looked through all the publications and I didn't see any description of the car, year of the car, color of the car, and I don't know what that would have contributed but I guess your argument is basically if they had publicized all that information then the security people should have been searching everybody coming into the mall to see whether that car arrived. Well our argument wasn't that the security company should have been searching every car, however the defendants conceded that had they been aware of this manhunt they would have increased security on the day of the shooting and they would have requested. Well tell me, just give me a hypothetical about how having eight officers instead of four officers or two officers would have prevented the shooting. I mean the shooting took within the place of a few seconds, there was a police officer nearby, he came to the scene, but the duty of the mall is to provide an invitee with a reasonably safe place to be but this mall had what six entrances to it, over 5,000 spots, people come in and going, it's a huge mall and so you have 30 security people around. People drive in and out all the time and your suggestion is that somehow some officer should have been able to identify a car with the shooter in it and then done something at that point, I don't follow. So your honor, the facts in the light most able plaintiff are that the shooter had been at the mall a minimum of 20 to 30 minutes sitting in his vehicle which was a parking space. A lot of people sit in vehicles, they wait for other people, they sit on their phones, somebody goes in and doesn't hear him, I mean just because somebody sits in a car is that a suspect? According to the plaintiff's expert that is a suspect and that's the type of situation that is suspicious. You have over 5,000 car spots in that mall and they're going to go around and look for people sitting in cars and determining whether those persons are suspects. Your honor, that is precisely what the evidence in the light most favorable plaintiffs in this case says, that the security guard who was patrolling with a trainee that day in only one of two vehicles that were available for patrolling the lot with the other vehicle sitting in a garage where it wasn't visible, it might have acted as a deterrence, hadn't even gotten to that part of the parking area yet. Had they had more guards on duty, more personnel, and had they been operating at least one more vehicle, then someone would have driven through that location at least some time before the two hours that it took. Can I please step back? You told us at the beginning this all presupposes there's a legal duty which is the thing the district court found there wasn't and I guess you began by telling us this is a very busy mall in a very busy area and just as a matter I guess of judicial notice, I am aware of this broad area. I mean, so within the general vicinity of this mall, I would not be surprised to learn that there is a Home Depot, a school, a large hotel, all kinds of other large retail establishments. And I guess what my threshold question is, is there any basis for saying that if the mall has a duty, all of those other large retail establishments in the vicinity didn't have exactly the same duty? Your Honor, we're not asking for a broad precedent in this case, but under the facts of this case, the mall, because it had 5,500 parking spaces, was a prime target for a carjacking. But I mean, again, I imagine that a Home Depot has three to four hundred parking spaces. I mean, I guess I'm saying, are you identifying any basis in which we can say this mall has a legal duty under Maryland law, but an enormous embassy suites six blocks away doesn't, and an enormous Home Depot half a mile away doesn't, and a gigantic grocery store with a huge parking lot or, you know, I mean, I guess is there any basis, is there anything about this mall qua mall that means they have a duty and every other large retailer in the vicinity wouldn't have had the exact same duty? Well, part of the issue here is that the mall hired security, and part of the security's job was to patrol the parking lot, deter crime, and protect mall patrons. And so that's one of the distinctions. I don't know whether Home Depot has security. Well, I think the question is, I'm very interested in the question myself, and the question is, we're talking about a question of duty, legal duty under Maryland law. And the district court focused on that, as you know. So the question is, what is the duty that a retail establishment has with respect to its parking lots? Your Honor, I'm glad you asked that question, because the mall owners and the property managers had a non-delegable duty based on at least one of three basic tenets of Maryland court law. The first of which is the mall's actual knowledge of prior violent crimes that occurred in the parking lot within three years and earlier, before this incident occurred. Those included stabbings, in the light most able to the plaintiffs, on two separate incidents in two different parking areas, and also a rape at night point in a garage. So what is your best authority for the problem? I mean, I understand you're friends on the other side. I don't even think the record creates a genuine issue about that, but let's give you that benefit of the doubt. What is your best authority for the proposition that three, obviously horrible, regrettable, violent incidents over the span of multiple years satisfies this prong of the duty analysis? Your Honor, it's the combination, not only of the prior violent... No, I'm asking you, what is the best case for the proposition that that creates this sort of duty? It would be the Troxell case is one of the cases where that would create that type of a duty. And I would submit that... What did the Troxell case hold? The Troxell case held there was a duty where a patron in a nightclub was attacked based on prior violence at the nightclub. I think the key here also is to, in addition to the mall's duty based on the prior criminal history, they also owed a duty to maintain the voluntary security measures that they'd taken, which was the installation of CCTV cameras and hiring security guards. So for that purpose, the mall knew in advance that they had an issue, they hired security, and they knew that they had a blind spot in their CCTV coverage, which the security company alerted them to well in advance of this incident, that they wouldn't provide the funding to increase the security cameras, which is one of the things that the security company had asked. I'd like to move on to the security defendants, because I think the duty that in their instance is even stronger than the mall's. Under restatement section 324A, which is part of Maryland law, one who undertakes to render services which he should recognize as necessary for protection of a third person may be subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care. There are two aspects of this. The mall owner specifically contracted with the security company for the very purpose of providing security. The contract specifies that the company is to provide, quote, a secure and safe environment for all staff and patrons. The contract required, quote, creating a visible presence to deter criminal activity, conducting patrols of vehicle parking areas, quote, to identify and deter security and safety risks. Does this section of the restatement apply to preventing criminal acts of third parties? I know we're dealing with a security company. Yes. But the restatement section says if you do your, you accomplish your undertaking in a way that increases the risk, right? If you repair the light bulb in a way that makes it riskier for people who walk underneath, then you can be liable. So for it to apply, we have to, there has to be, that the security company accomplished its job in a way that increased the risk to patrons of the mall of this type of violence by a criminal actor. Judge Rushing, I believe that is only one of the three subparts of restatement 324A. It's the one you relied on in your opening brief. Well, we also relied on the fact that the subpart 3, whereby the mall, if the harmless suffered because of reliance of the other for a third person from the undertaking. Here, the mall is the other, the contracting party that was relying on the security company to provide security services. I thought under Maryland law, it was reliance of the injured, the plaintiff. Reliance by the plaintiff. I'm sorry, could you repeat that? I thought under Maryland law, reliance was reliance of the plaintiff. Assuming that this is something that you raised in your opening brief. Under the restatement, it can also be the reliance of the other contracting party. Has Maryland applied it that way? Maryland hasn't applied it that way, but nearly every other jurisdiction that has considered this question has found that restatement section 324A creates a duty for security companies when a plaintiff is injured by third party criminal conduct. Even this court's unreported decision from 1997, the bias versus IPC case, that the security company in that case owed a duty. Now, that case was tossed on summary judgment because of the causation issue, but the duty aspect, in this court at least, was held to be under restatement 324A, which that case also recognized as being the law of Maryland. In addition to section C, subpart B creates liability where one contracts to perform a duty owed by the other contracting party to the third person. Here, it applies because the security company contracts specifically to provide security services and it was the mall to protect the mall patrons. They voluntarily undertook the duty to perform a duty that the mall had owed to the patrons. Going back to the mall, the property owner owes three types of duties, at least two of which apply in this case when it involves criminal conduct. The first is to eliminate conditions that contribute to criminal activity if they've had prior knowledge of similar criminal activity. Now, granted, there hadn't been a shooting in the parking lot that was part of this record, but we do know that there were violent assaults, stabbings with weapons in the mall parking areas on prior occasions, and if they knew or should have known of events occurring immediately before the actual criminal activity. That's the Coronado case. The defendants here, had they been taking basic, easily to install types of monitoring of local news, could have made that imminent foreseeable harm lessened. In Coronado, the court held that where a hotel guest notified the front desk 10 minutes earlier that someone at a party had a gun, that 10-minute delay was sufficient to create a duty when the person at the party shot someone else. Here, the shooter was present in one of the mall's parking lots for a minimum of 20 to 30 minutes. We don't know how long that shooter was there. It could have been for hours because the patrolling vehicle, the one patrolling vehicle when they had two, hadn't gotten to the location, the cargo location in that lot by the time the shooting occurred. There are 44 checkpoints. They'd only gotten to the 33rd or 34th. It baffles me to figure out, based on all those news reports, and I think I looked at every single one of them, that anybody could identify miles away from the school shooting, that anybody could identify somebody in a parking lot sitting in a car. The car was not described in the news reports, the color, the year, his age, and there was a picture there of him, I think, in the news reports, and they said, if you have any information, supply it. It seems to me, here's a 54-year-old man, a 52-year-old man, whatever, he drives in the parking lot and he's sitting in the car with 5,000 other cars, and you're suggesting that somehow somebody would anticipate a shooting and go over and apprehend him for something when they don't even know if that's the right guy? Your Honor, I apologize because in our joint appendix, it turns out that a portion of the exhibits that were submitted for summary judgment in this case were omitted inadvertently from the joint appendix, but in the appellate record, the record on appeal, there is an exhibit from the admissions. What's the appellate record different from the joint appendix? You said the appellate record? Yes. Where is the appellate record? You just mean the district court record? Yes, the district court record. Oh, that record in the case. I'm sorry, the record, yes, the record in this case, which I understand was transmitted to this court in full before we filed our joint appendix, included in docket entry 84 of the record from the district court in the motion for summary judgment joint appendix G part two, there was a request for admissions. In exhibit eight of that joint appendix in this district court, age 64 of 130, was the Fox News report, which included the make, model, color, and vehicle tag number. That was the day of the shooting, right? You don't have the time on that. The Fox News report was the day after the school shooting, the day of the mall shooting, right? That's correct, Your Honor. Okay, and there was testimony that no one can say that that information was available before the shooting. No, however, even the- That was the testimony that the expert couldn't say that that was available before. That's correct, Your Honor. All right, thank you. I think you have some rebuttal. Mr. Gallagher. Good morning, Your Honor. May it please the court, Brian Gallagher, and I'm arguing on behalf of the appellees in this case. I represent a Montgomery Mall owner and Westfield LLC. My colleague, Ms. Bardot, she's going to be handling a discrete issue relating to the PSC appellees in this case. That's the security company? Yes, sir. Your Honor, the events that took place at the Montgomery Mall on May 6, 2016 are undeniably tragic. Nobody should ever have to go through the pain of such a random act of violence. However, the appellant's attempt to hold the appellees liable for this random act of violence is incompatible with the law and the facts of this case. The undeniable facts of this case, or the undisputed facts of this case, are that on May 5, 2016, Eulalio Tordell went to High Point High School with the target of his estranged wife. He shot and killed her. Although he did shoot another individual, that individual attempted to intervene between the confrontation between Tordell and his wife. Of the 20 news articles that were presented in the joint appendix, if you read through every single one of them, 19 of those 20 are from prior to the mall shooting. They describe this, and it's not they, this is not the media. The media is reporting what the chief of police of Prince George's County described this as. The chief of police described this as a domestic-related incident. He said that this is not an active shooter situation. Now, over the next 18 hours, Mr. Tordell, from all we know, based on the record, drives around. He drives down into Virginia, drives up into Frederick County, Maryland. For 18 hours, he apparently drives around. Now, in those 18 hours, he could have gone anywhere. He could be in Florida, he could be in Texas by then. But what the appellants would have you believe is that it was foreseeable that Mr. Tordell would not flee the area. It was foreseeable that he would stay or come back to the area and go specifically to this establishment. Wait, that doesn't sound like a duty argument. That sounds like a no-breach argument or a no-proximate-cause argument. And the district court dismissed this on a duty theory, not a causation or breach theory, right? You're correct, Your Honor. And sticking, the arguments for each kind of meld into each other a little bit. And there's a little bit of an overlap. And I'll get to the overlap with the standard of care in a second. But speaking specifically to what the appellants argued here, generally speaking, as this court knows, there's ordinarily not a duty to protect patrons of a business establishment. However, a special relationship between a business owner and a patron can be established if certain circumstances are present. One, the owner controlled the dangerous or defective area. Two, the owner had knowledge or should have known of the injury-causing condition. And three, the harm suffered was foreseeable. Your Honor, the appellants made an argument that the district court incorrectly found that there was no duty based on the allegation of prior incidents in this case. Now, specifically, they allege that these violent prior incidents consisted of a rape and two stabbing incidents. Your Honor, as the court knows, prior incidents must be similar and recent. Similar in nature and recent in time. The rape incident happened in 1991, some 25 years before the incident that is before this court. Under no circumstances can it be considered that that was a recent event that could be used as a basis to impugn liability. Now, going on to the issue of the two different stabbings, for a dispute of fact to be able to overcome summary judgment, this court knows that it must be a genuine dispute of a material fact. I will first posit to you that this is not a genuine dispute of fact, that this is actually a single incident that the appellants are attempting to create into two separate incidents. As the record reflects, the mall representative was divorced In his testimony, he said that in the five years prior to this, he went back and conducted a review and they were able to uncover a single stabbing incident that occurred in 2013. When Mr. Bazan was deposed, he stated that in the time that he worked there, he remembers one other incidents of violence. It was a stabbing. He wasn't very sure of exactly when it took place and he believed, I believe his word was he believed it happened in one of the parking lots. Now, Your Honor, if you look at... I'm sorry, let me back up one more second. If you then look at the deposition testimony of the appellant's expert, he himself says that he was provided information that there was a single stabbing and a single rape incident. Now, I posit to you that they are talking, it's not a genuine dispute of a material fact of whether there was one or there was two. It seems to be that everybody's talking about the same incident and that it's not actually a genuine dispute of fact. However, Your Honor, even in a light, even if this court were determined that it is genuine, I would posit to this court that it's irrelevant because it fails to meet the standard of being similar in nature. And I say this relying on a long line of cases that were cited in our brief in which the incident must be similar in nature. At no point are there any incidents of shootings at the mall. The record is devoid of any allegations of shooting. The record is devoid of any allegations of carjackings, which is what the appellants argue happened here, is that there was an attempted carjacking and that there was a shooting. There's absolutely nothing in the record to reveal that there was any shootings or carjackings that have ever taken place at the mall. Now, if you look at the cases that I've cited, for instance, one of those cases being, I'm not going to pronounce this accurately, Nogito versus First National Bank. The court found that evidence of prior robberies didn't put the bank on notice of a customer would be shot. There are several other cases just like that where the court determines that just because there was an incident before, it must be similar in nature to the recently complained about incident for it to be relevant and to be used as part of establishing that duty. Your Honor, moving on to the next issue of, and this is something that I briefly touched on a moment ago, is the appellants are attempting to establish a second prong by alleging that the mall defendant should have known of Tordell's violent tendencies. That they should have known, and I'm quoting here, that he would attempt to steal a vehicle to replace his, excuse me, that he would attempt to steal a vehicle to replace his rental vehicle. There is absolutely nothing in the record of this case that would make anybody believe that there was the possibility of a carjacking to take place, whether it be on the mall's grounds or anywhere else in the area. There is nothing in there to believe that it was foreseeable that he, Mr. Tordell, who committed a crime, a specific crime that is described in the media as a targeted domestic violence incident, that he would, that occurred 15 miles away, 18 hours before, that the mall should have been on guard of that individual attempting to come and carjack at their location. Your Honor, the appellants raise two more issues regarding the duty. They allege that the mall should have known about Tordell's presence at the mall that day, and they also allege that they failed to maintain adequate security. Your Honor, both of those issues go straight to the standard of care in this action. Both of those allegations allege that we failed to provide adequate security. That phrase is repeatedly mentioned in their brief. How do we know what would be adequate security other than by the testimony of a security expert, somebody who could testify that this is the standard of care? And Your Honor, as we cite to in our brief, their security expert was wholly incapable of identifying what the standard level of security is for a mall in that situation. We walked, I walked through with him. You're saying, if you're saying they should have staffed up, you're implying that they weren't adequately staffed to begin with. What is a baseline level that they should have had for this day, for this time, for this time of year? Could not answer that. Said that was beyond the scope of what he was asked to do. So if they cannot establish a standard of care, they similarly can't establish and meet the element to prove a duty that we failed to meet that standard and or that the presence on that day should have been, should have been identified. Your Honor, unless this court has any further questions, I have nothing further. All right, thank you, Mr. Gallagher. Ms. Bardot. Thank you. My name is Heather Bardot, and I represent Professional Security Consultants and Professional Security Concepts, two of the appellees in this case. Although it has been common for everyone to refer to them jointly as PSC, they are not one in the same. And just for the record, I want to be clear that the entity that was contracted with the mall was Professional Security Consultants. Professional Security Concepts has no connection to this case. Mr. Gallagher has addressed the issues in the appeal, which I think jointly apply to both of us. And I adopt those arguments on behalf of my clients. I want to take the limited time that I have to address the appellant's argument that the security companies, my clients, owed a duty to the appellants to protect them from a criminal act of a third party, in this case, Mr. Tordil. Ms. Bardot, could I ask you to address specifically Restatement 324, Big A, sorry, Big A, Little A? Because I just pulled up your brief and I was trying to remember what your response to their argument about Little A was. And I think your brief only responds to Little C, which is not the argument they make. So could you explain to me why they're not covered by Little A? Yeah, well, here's the problem, right? Starting out at the beginning in the complaint, they never made an allegation of sort of what the courts refer to as a negligent undertaking, a 324A allegation. That's never made. That comes up by way of the district court on the motion to dismiss pulling that out. It's not even an allegation in the complaint. And so we move on and they brief this issue in this court and I would submit when they submit their original brief, citing to 324A, it is completely unclear which section of that they even refer to in their original brief. Well, except their brief is literally quoting from Little A. I mean, so that's on pages 27 and 28 of their brief. But I guess I'll just ask you what I think of this. Sure. So one, so tell me what's wrong about this analysis. One, your client who undertakes for consideration to render services to another, the mall, which he, your client, should recognize as necessary for the protection of a third person or his things, the shooting victim, is subject to liability to the third party, the shooting victim, for physical harm resulting from his, your client's, failure to take reasonable care to protect his undertaking if his failure to exercise reasonable care increases the risk of such harm. So I know that Maryland has not formally adopted that, but for purposes of my question, assume for the sake of argument that Maryland would adopt that statement. Right. What part of that means that your client doesn't have a duty? Right, and thank you for clarifying that because I would have addressed first the fact that it hadn't been adopted and that it should be adopted and there's a lot of policy reasons and so forth. But to answer your question specifically, what I would tell you is that first of all, you've got to look at the paragraph before you get to little A, right? And I think this goes to the point that Mr. Gallagher raised, that you first have to find that there's a failure to exercise reasonable care. And the record in this case doesn't even... Well, no, but that's a breach causation question. That's not a duty question. Okay. This is the language that creates the... I mean, look, I guess I'll... Full cards on the table. I suspect they might have a really, really difficult time proving breach and causation against your client. But I guess what I'm less clear about is the district court's conclusion that your client didn't owe a duty in the first place. Right. Well, I think that the court didn't find that 324A provided a duty. And absent that, what the court found was that... Why not? I'm not asking what the district court did. Why do you think the three... Again, positing everything we said about assuming Maryland would adopt this provision, why doesn't 324A create a duty on your client in this situation? Positing that Maryland would adopt it, what A says is that they must show that the failure to exercise reasonable care increased the risk of such harm. And I would submit that there is nothing in this record, and this was addressed in our brief, that would establish that anything my client increased the risk of harm to the plaintiffs. Totally agree with that, but that to me sounds like a breach argument, not a duty argument. Maybe it is. Maybe it's apples and oranges. But at the end of the day, I think that if they can't show... Let me just cite you to... Wouldn't you say that increasing the risk is a different duty than maintaining safety or precluding injury? It is a different duty. It's more like a failure to act. I would refer the court to a case that I think is helpful that was not cited in our brief. I was updating the research to make sure there'd been no change. And I came across a case, Sheridan versus United States, 969F2-72-1992. And in that case, they were trying to determine whether or not there was a duty at all based on the same sort of restatement. And they said that prerequisites to having a duty would be that something that the defendant did increased the risk of harm or induced reliance. You have to have those first before duty attaches. The reason I think it might matter whether this is a duty or a breach issue, is again, I think that they're gonna have a very hard time showing a breach on these facts. But let me give you a hypo that illustrates why I'm worried about saying there's no duty, right? So I want you to imagine a scenario where a security officer is sitting like in the room looking at the cameras, right? He's in the room with the cameras pointing at the parking lot. And on those cameras, he sees a man get out of a car. The man is wearing body armor. The man is clearly like kitted up with a full Rambo style kit. The man slowly walks to the trunk of his car. He opens it up and he pulls out an assault rifle and several other guns. And then it's a huge parking lot. He starts very slowly walking towards the mall. And the guard does nothing, nothing. He doesn't. And I'm not asking him to be a hero and get shot. I'm asking him to pick up the phone and call the police or something like that. But he does not do a single thing in that moment. And the man goes in and there's a mass shooting incident. Why isn't the logic of your position that in that situation, that if we say there's no duty, I don't think there's any liability even in that situation. And why am I wrong about that? Or why from a duty... I get from a breach perspective why that hypo is very different from this case. But from a duty perspective, why is it different? You still have to figure out where does the duty emanate from, right? So a normal person under those circumstances... No, no. It's your client with your contract that has all these things. Like we contract for... I mean, you know the language of your contract. Provide security to the mall patrons. The contract is exactly the same as yours. I still don't think that my client has a duty to a third party to provide them protection from a criminal act. I don't believe Maryland law stands for that proposition. I think the district court was right on that. I don't think 324A would be adopted to override this longstanding law under Maryland precedent. I just don't believe... There's no case where that's been done. And I will say that the cases such as the Bias case, which the appellees relied upon, was 26 years ago. That's the case where the court says, well, we think that Maryland would adopt this. And in 26 years, that still hasn't happened. And so without any Maryland precedents saying, yes, we would find that 324A overrides our longstanding, longstanding jurisprudence that says, even in your scenario, I don't have an obligation to intervene. I just don't think it would do that. So I don't think that the cases are different because I don't think that duty would ever be imposed under Maryland law. So I hope that's responsive to your question. And I would just note too, just to try to close this gap, under 324A, little section B, the appellees have argued that we had undertaken to perform a duty owed by the mall defendants. Again, this is not an argument they ever raised before. I don't think it's been preserved. But to the extent that the mall defendants don't have a duty, undertaking their duty certainly would give us no obligation under that section. And then the last section, the harm is suffered because of reliance of the other or the third person upon the undertaking. I would submit that no harm was occasioned by reliance upon my clients and that the plaintiffs have pointed or the appellees have pointed to nothing in the record to show that there was any reliance upon my clients by them to do anything. There's not even anything that suggests they knew about my clients or the level of security that my clients would provide. And at the end of the day, my clients were an observe and report company. They had no batons, no guns, no mace. All that they could have done was observe and report. And as was mentioned, 50 yards away, there's a marked police cruiser there. Even he didn't respond or know of this incident. So I hope I've covered everything. It's a lot. Thank you. Thanks. Mr. Gold? Thank you, Your Honor. Regarding the foreseeability question that the mall owner was... I think we'd hear more clearly if you were willing to. You don't have to take it off. Regarding the foreseeability issue that the mall defendant was addressing, this was a trained police officer with the Department of Homeland Security who would have known that his rental vehicle had GPS tracking and therefore was likely to be trying to get a different vehicle. And the best way to do that was a carjacking. And that's not only what happened at the Montgomery Mall. He attempted carjacking, but that's where he was ultimately captured was at another mall where he also tried a carjacking. And the standard of care that applies at a minimum is to monitor local news, to stay aware of local events. But this sounds sort of like you're arguing for sort of a good Samaritan law. I mean, the questions we keep pressing about duty, the idea is if a bystander, taking Judge Hyten's example where the Rambo type of guy reaches in for his assault weapon and a bystander in the mall sees it and does nothing. We don't impose a duty on him to be a police officer. And Maryland has adopted that position with respect to landowners and so forth. In other words, there's only so much that you can expect of security officers that are not armed, that they're there to call in if they can. But there's no duty imposed on them to get involved and prevent criminal acts. I'm not suggesting that the security company defendants should have intervened and physically made contact with this person, but there was ample time for them to have seen him sitting in his car. The patrolling officer said specifically that that would have raised a red flag for her. She'd seen someone sitting in a vehicle for 20 minutes, backed into a space, that would raise a red flag. They could have contacted the police. That's the same duty you're addressing. In other words, does a person have a duty to act on somebody sitting in a car who's suspicious? A security guard absolutely does. It's in their contract. They're supposed to be... Well, you're not the beneficiary of the contract. You have to rely on the tort law, the extension of duties to third persons to prevent criminal acts. But they are a third party beneficiary of the contract. The contract specifically requires that the security company provide services to protect multi-parts in the parking lot. And the contract is what creates the duty here. And every other jurisdiction that has considered that has found that 324A creates a duty for a security company with regard to criminal conduct. But hasn't Maryland rejected the idea that you can create a duty, a tort duty to a third party via contract? Not that I'm aware of. I think Maryland has rejected that idea that a contract creates a duty to a third party. Now, they haven't specifically addressed this restatement question, but that seems to counsel against us reaching out to say, despite that, they would interpret this restatement and adopt it in the way that you suggest. I believe that they would. And part of the reasoning is because, although the Maryland Court of Appeals hasn't specifically adopted Section 324A, it's been cited in a number of Maryland cases by the Court of Special Appeals, the intermediate appellate court. And again, I would refer this court to the case that it decided in an unpublished opinion in 1997. And there's another case that we cited in our brief from the US District Court for the District of Columbia that actually involved this very defendant, PSC. And that court held that they had a duty to protect patrons at Union Station in D.C. That was in their contract. The duty is created by virtue of their contract. And just with regard to the question as to Judge Hayden's concerns that we may not be able to prove breach and causation, that's not the issue in this case today. The issue in the case today is whether there is a duty and whether it was foreseeable because there's several elements of duty, all of which have to be considered. Some of the elements include whether, not just foreseeability, but whether the specific plaintiffs actually suffered some harm, which clearly happened in this case. The degree of certainty, the policy of preventing future harm, which I think, as Judge Hayden's hypothetical was, if a security company who's supposed to be monitoring sees a gunman walking toward the mall, they absolutely have a duty to at least try and contact authorities to intervene. The extent of the burden up to the defendant. In this case, all they had to be doing was monitoring local news. It's not a huge lift. They actually had something called the Mercury social media platform device, which would have allowed them to have seen various tweets. That's a strange duty. A commercial establishment, retail establishment that has hired security, they have to monitor the newspapers? For crimes committed in the area 12 miles away, 13 miles away. Pardon me? The security company defendants need to be doing that. And I submit that the mall does as well because even though the mall has hired a security company, part of what the mall needed to do was to make sure that the funding that they provide... I thought the restatement talked about increasing the risk and not protecting against criminal conduct. I'm thinking that in the DC area, including Northern Virginia and Maryland, there's crime committed all day long. And if you monitored the newspaper reports of those crimes regularly, the question is, what do you do with that information? How do you handle it? And what's reasonable? I think that's a strange duty to impose. I think the information here is that you're not going to be concerned about drug gang killings, for example, unless the gunman... Why not? We have an MS-13 problem in DC. Unless the gunman has training and is allegedly, supposedly looking for a vehicle to carjack. That's the difference in this case. And I would submit that any type of violence like that that occurs in the DC metro area... But again, I don't want to take you off track at the end of your argument, but we agree there's nothing in the record that would have put the mall or the security company on notice that this man was in a particular car, was trying to carjack another car or anything like that, right? There was a news report that said he left a car at the scene maybe there's nothing saying he's in a rental vehicle, he's looking to carjack. That was all after the fact, right? There were photographs of him. Yes, you're correct. That was after the fact. But there were photographs of him. I'm just saying that doesn't distinguish your drug trafficking, right? If there's violent crime and that pretty much would mean that the mall and its security company, there's violent crime in the area, they should be on alert. If the photograph's in the news. This is a particular example because of the training that the gunman had as a trained police officer. He knew that his vehicle had to be got rid of because of the GPS tracking. And they knew that he was still on the loose. He'd been on the loose for at least 18 hours. Okay. I think we understand the arguments and I think at this point, we would come down and greet counsel. We're in the nuances of Maryland law. I don't know. I'm from Maryland, but I'm a stranger. I've been on this court so long that they isolate me from Maryland law. But anyway, we appreciate your arguments and we would normally shake your hands. We'd like to greet you in that respect and welcome you back at another time when we will be able to shake your hands. Thanks very much. We'll adjourn court with a motion. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens